## Crowder v. Stine, et al.

(Decided December 12, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Appeal and Error—Submission of Causes—Discretion of Courts.— Courts are given large discretion as to the submission and trial of cases, and unless such discretion is abused it will not be disturbed by this court.

2. Trial—Submission of Causes—Discretion of Courts.—Where the plaintiff failed to take and have transcribed his proof for more than twelve months after he had a right to do so, and furnishes no excuse for this delay except that he was unable to locate a witness whose deposition he desired to take, but furnished no facts from which it might be reasonably inferred that he would ever find the absent witness, and furthermore declined to file the depositions already taken, the court did not abuse a sound discretion in submitting the case and trying it upon the pleadings, as it is not shown that the proof was failed to be obtained by any unavoidable casualty, any act of the defendant or his attorney, or any accident or surprise which ordinary prudence could not have guarded against.

W. McKEE DUNCAN for appellant.

AL M. MARRET for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit was filed in the Jefferson circuit court by the appellant, S. B. Crowder, on the 14th day of January, 1913, against George W. Stine, F. E. Webster, the United States Trust Company, the LaFlore Mining and Milling Company, and other stockholders of the latter company, seeking to require the delivery to him of 1,500 shares of the capital stock in the mining company of the par value of $10.00 per share, but, if this relief should be denied, to recover against the defendants, Stine and Webster, the sum of $150,000.00. The basis of the suit, as alleged, is that Webster and Stine were partners in some mining properties in the state of Sonora, Mexico, and that as such owners they had contracted with the plaintiff to dispose of such property either by an outright sale, or if this should not be effected, to organize a corporation for the purpose of taking over the property and subsequently operating it; that in obedience to this agreement, and through his efforts, the plaintiff had organized

the mining company under the laws of the state of South Dakota, with an authorized capital stock of $1,500,000.00, a majority of which was issued to Stine, holding one-half of it for himself, and the other one-half in trust for Webster, and that a portion of the stock had been issued to the other defendants as stockholders in the mining company, leaving $60,000.00 to be held as treasury stock; that the stockholders had, by mutual consent, agreed for the issued, as well as the treasury, stock to be held and kept by the United States Trust Company, a corporation in Louisville, Kentucky, under terms which are not necessary to state here, and that at the time of the institution of the suit it had in its possession both the issued and the treasury stock.

It is charged that as compensation for the services which plaintiff under his alleged contract was to receive should be a sum equal to ten per cent. of the price realized for the property should it be sold, but if not sold, and a corporation should be organized taking over the property, he should receive ten per cent. of the capital stock of such corporation.

After various motions had been filed and acted upon, and on May 13, 1913, an answer was filed putting in issue every allegation of the petition as amended. Some of the defendants were proceeded against by warning order, including the defendant, Webster, whose residence is stated in the affidavit for the warning order to be Brinkley, Arkansas.

On the 17th day of May, and four days after filing the answer, an order was entered upon motion to the effect that the official stenographer of the court, Miss Nora R. Brown, should take the testimony to be heard upon the trial, which, as the action is in equity, would be by depositions. From some cause not apparent from the record, this stenographer did not take the depositions, but they were taken by Miss Emily A. Overman, during the month of June, 1913. After that time she took no depositions, and those taken were for the plaintiff only. No order appears in the case after the designation of the stenographer to take the depositions until the 29th day of December, 1913, when the case was set at rules upon motion of the defendants, and on the 3rd day of January, 1914, the record shows that upon motion of plaintiff the cause was submitted, but evidently this is a clerical error, as the motion must have been made by the defendants. At

that time no proof had been filed by either party to the litigation, and on the 24th day of January, with still no proof in the case, the petition was dismissed. On the 31st day of January, five days after the order of dismissal was made, a motion was made to set aside that order and reinstate the case on the docket, which motion was on the 3rd day of February, 1914, overruled, and from the judgment overruling the order of dismissal the plaintiff prosecutes this appeal.

In support of the motion to set aside the order of dismissal, the affidavit of plaintiff's attorney is filed in which it is stated, in substance, that the depositions of two of the defendants were taken in January, 1913, immediately following the filing of the suit, and that after the entry of the order on May 17, 1913, the depositions of "various witnesses" were taken before Miss Overman, who was the assistant to the official stenographer. It is stated in the affidavit that after the completion of the taking of these latter depositions in June that the attorney for the plaintiff notified the attorney for the defendants that he could not complete plaintiff's proof until he obtained the deposition of the defendant, Webster, and that after he made diligent effort to locate Webster so that his deposition might be taken, but of what these efforts consisted is not stated, except that inquiry was made of defendant, Stine, who, it is claimed, informed plaintiff's attorney that he did not know where Webster could be found; the affiant further states that after being so informed by the defendant, Stine, he then notified defendants' attorneys that he could not tell how long it would be before Webster could be located, but that as soon as he could be located an effort would be made to take his deposition. He says that defendants' attorneys did not object to this, but that on the contrary he understood that they consented to it. However, there is nothing alleged from which such consent could be inferred. It is furthermore stated in the affidavit that from the best information that the plaintiff and his attorney could obtain they believed that Webster was in the state of Senora, Mexico, but that on account of the disturbed condition of affairs in that country they were unable to reach him or to take his deposition, but that they were assured that they would be able to do so within a comparatively short time. Nothing is shown as to the reliability of such assurances. It is further shown that the attorney making the affidavit

did not expect the case to be set at rules and that he "overlooked same on the official record of Wednesday, December 31, 1913, and believing he had no case on the docket for January 3, 1914, he did not attend the session of court on that day." He furthermore states that he examined the docket as contained in the official record for the 31st day of December, 1913, but by some oversight he did not see this case thereon, and because of this alleged unavoidable accident it is insisted that the court erred in dismissing the petition. The plaintiff adopts as his affidavit that made by his attorney.

The defendants filed the affidavits of their attorney and that of the defendant, Johnson, and the affidavit of the stenographer who took the depositions for plaintiff in June, 1913, Miss Emily A. Overman. In the affidavit of the attorney for defendant and that of Johnson all facts looking to a consent of any delay in the preparation of the case as stated in plaintiff's affidavits are denied, and by the stenographer it is shown that the depositions, if transcribed, would be exceedingly bulky, and that she had applied on numerous occasions to the plaintiff, as well as his attorney, to procure them to pay her for transcribing and also for taking the depositions by shorthand notes, but that she had been unable to get them to do so, and for this reason she had not transcribed the depositions, and, of course, had not filed them. There is no evidence heard upon the motion contradicting the affidavit of the stenographer, nor is there anything shown whereby it might be concluded that the depositions theretofore taken would be filed if the order of dismissal should be set aside.

One of the grounds provided by the Civil Code of Practice for the granting of new trials, and for the relief of default judgment is "accident or surprise which ordinary prudence could not have guarded against." In construing and applying this provision of the Code, which is but an express enactment of a rule of practice long ago enforced, this court has shown great liberality to the end that a litigant might try his case upon its merits and that his trial might be a fair one. But this liberality has never gone to the extent of upholding the right of a litigant to walk off and virtually abandon his case. If, after doing so, the court, in deference to the right of the opposing litigant to have the case against him disposed of within a reasonable time consistent with justice to all parties,

should try the case, the party in default cannot be permitted to characterize his own conduct as unavoidable casualty, accident or surprise, and thereby obtain relief against the judgment. In fact, the casualty which will entitle one to a reconsideration of his case must be *unavoidable*, and the accident or surprise which will entitle him to have the same relief is one "which ordinary prudence could not have guarded against." This statement of the law has been uniformly upheld by this court, as will be seen by an examination of the following cases: Mussin v. Collins, 1 A. K. Marshall 350; Holburn v. Neale, 4th Dana 120; Ross v. L. & N. R. R. Co., 92 Ky. 583; Kammon v. Otto, 17 Ky. Law Rep. 1367; Prather v. Campbell, 110 Ky. 23; Bone v. Blankenbaker, 24 Ky. Law Rep. 1438; Stamper v. Forman-Earle Co., 158 Ky. 324; Noe v. Davis, 171 Ky. 482.

In the Ross case, this court, in stating the rule, said:

"When a party institutes an action ordinary or is summoned as defendant, it is his duty to exercise ordinary diligence to inform himself when it is set for trial, and to be in attendance when it is called; and, according to the plain intent of the Code, neither accident or surprise is an available cause for setting aside a verdict or judgment and granting a new trial in the absence of such diligence on part of the applicant.

"A case may be called for trial before it is regularly reached on the docket, or at a time when neither plaintiff nor defendant could be reasonably or fairly expected and required to be present, and, consequently, the ends of justice would, under such circumstances, require a new trial. But where a verdict or judgment has been rendered against a party because of his absence, or for want of due preparation for the trial, caused by his own lack of ordinary diligence, we know of no principle upon which a new trial should be granted."

The Kamman case was one brought in the same court as the instant case, and governed by the same rules of practice. The case had been set at rules and upon the day the answer was due, none having been filed, a judgment by default was taken against the defendant. He afterwards appeared and entered motion that the court set aside the judgment and permit him to file an answer which he tendered. The only excuse he offered for failing to file an answer on the day the case was set was that neither he nor his attorney knew that the action had been

set at rules.   This was held not to constitute diligence,
and the motion to set aside the judgment and permit him
to file answer was overruled, which action on the part
of the trial court was upheld by this court, and, in doing
so, it is said:

"The excuse for not filing the answer at the proper
time is that they and their attorney did not observe that
the action had been set at rules, or was at any time upon
the trial docket of the court.   The attorney for appellant
shows by his affidavit that he was employed, and would
have filed the answers but for the fact that he had over-
looked the case on the docket, and was not aware that
judgment had been rendered until about the 3rd of March,
1894.   If it be conceded that the steps taken to obtain a
new trial are a compliance with the law, yet the reasons
or excuse offered for the neglect or failure to answer are
not sufficient to authorize the relief asked for."

The other cases referred to fully sustain the princi-
ple, and we do not deem it necessary to quote further
from them.

In the case under consideration the issues had been
made up more than eight months before the petition was
dismissed; all of the depositions plaintiff had attempted
to take had been completed more than seven months be-
fore the dismissal of the case, and it is not shown what
was done to locate the witness whose deposition was de-
sired, further than it is in a way made manifest that in
all probability such witness would never be located; at
least there is no reasonable assurance given that he would
be located.   Neither is there any excuse given as to why
the depositions already taken had not been filed, nor is
there any offer made to file them when the motion to set
aside the judgment dismissing the case was heard.   The
most that can be said is that plaintiff desired the deposi-
tion of Webster if he could ever be located.

In regard to the surprise of plaintiff's attorney as a
ground for the motion to set aside the judgment, it is
clear, under the authorities referred to, that the circum-
stances do not constitute legal surprise.   No action or
conduct is shown on the part of the defendants or their
counsel calculated to mislead or in any way deceive plain-
tiff or his counsel, but, on the contrary, it is admitted
that the latter examined the docket as contained on the
official record of cases which had been set at rules, but
failed to observe that this case was among those set.   His

failure or oversight to observe the case is neither a surprise, accident nor casualty such as the court will grant relief against under any rule of practice of which we are aware.

Under the circumstances, we are convinced that the court did not abuse a sound discretion either in dismissing the petition or in overruling the motion to set aside that order.

Wherefore, the judgment is affirmed.